IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiffs, | 4:01CR3106 |
| vs. | |
| JOHN E. DAVIS, | **MEMORANDUM AND ORDER** |
| Defendant. | |

John E. Davis moves for compassionate release. I deny the motion.

*Background*

On June 19, 2002, a superseding indictment was filed charging Davis with conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846, tampering with a witness in violation of 18 U.S.C. § 1512(b), and using or carrying a firearm in connection with a drug offense in violation of 18 U.S.C. § 924(c)(1)(A)(iii). (Filing 1.) After a jury trial, Davis was found guilty on all three charges on December 9, 2002. (Filing 195.)

On December 16, 2002, Davis filed motions for new trial and a judgment of acquittal. (Filings 206-207.) On December 18, 2002, I denied the motions. (Filing 210.)

At the time of sentencing, on March 11, 2003, I found Davis responsible for the distribution of approximately 10 kilograms of methamphetamine. (Filing 272 at CM/ECF p. 11:3-11.)

I also found Davis should receive an enhancement for obstruction of justice. This enhancement was based upon the conviction for witness tampering and trial

testimony regarding phone calls made by Davis to the wife of one of the witnesses, threatening her and her family; Davis's assault of that witness when he believed the witness was working with law enforcement; an incident in which Davis played Russian roulette with another witness while interrogating her about her interactions with law enforcement; and Davis's efforts to get one witness, Mary Negethon, to convince another witness, her brother, Mark Osborn, to swear to an affidavit saying he had lied about Davis firing shots in the direction of his car as he drove past Davis's house (an incident that contributed to Davis's convictions on Counts II and III). (*Id.* at CM/ECF pp. 12:19-16:7.) At the sentencing hearing, I stated, ". . . I have never seen a case where the obstruction of justice enhancement is more warranted than in this case. . ." (*Id.* at CM/ECF p. 16:13-17.) Based largely on the same facts, I also applied a four-level role enhancement. (*Id.* at CM/ECF p. 23:7-9.)

With respect to the firearm charge, I found Davis discharged a firearm in connection with the drug offense. (*Id.* at CM/ECF pp. 31:7-32:18.) Davis, when given his opportunity to speak, continued to deny any responsibility. He said defiantly:

> THE DEFENDANT: Yeah. All these people that say they know me so well, I don't think they know me at all. They just know stories. All this is hearsay evidence. I would just soon have the death penalty if you are going to put me in jail for the rest of my life. If you want to do that, then that's what I'll take.

(*Id.* at CM/ECF p. 38:14-19.) I then sentenced Davis to life imprisonment on Counts I and II and a consecutive 10 years on Count III. (Filing 258.)

Davis is a Vietnam veteran. He was in his 50s at the time of the relevant events. His total offense level was 42, and after I sustained an objection to his criminal history, it dropped to I.[1]

---

[1] Davis had three criminal history points according to the probation officer (Filing 252 at CM/ECF p. 18 ¶¶ 97-98.) However, because two of those points were

On March 31, 2004, Davis's conviction and sentence were affirmed by the Eighth Circuit. *United States v. Davis*, 357 F.3d 726 (8th Cir. 2004). Among other things, the Court of Appeals held, in summary, that:

> The probative value of evidence relating to defendant's alleged threats and beatings of women, including a young girl, offered to show the lengths that defendant would go to protect a drug conspiracy, outweighed its prejudicial effect, and thus evidence was admissible.
>
> Circumstantial evidence was sufficient to support a finding that defendant shot an individual under the belief that the person was a potential witness against him and in order to keep the individual from testifying about the defendant's role in a drug conspiracy, as required for witness-tampering conviction.
>
> The district court did not clearly err in concluding that the defendant was a leader or organizer of drug conspiracy who was subject to four-level aggravating role enhancement under the Sentencing Guidelines; the defendant directed the activities of at least one other coconspirator and exercised control over other coconspirators through threats or violence.
>
> The testimony of witnesses believed by the district judge to be credible was sufficient to support finding that the defendant was responsible, for sentencing purposes, for a minimum of 10 kilograms of methamphetamine in connection with the drug conspiracy.

---

based on the probation officer's assessment that he committed the crimes of conviction while on probation, Davis objected. The Government conceded that it could not prove that he was on probation at the time the federal charges began, although it was very close. (Filing 256 at CM/ECF p. 5 (internally paginated condensed transcript pages 17-18).)

3

The Supreme Court granted a petition for a writ of certiorari, and the case was remanded to the Eighth Circuit for further consideration in light of *United States v. Booker*, 543 U.S. 220 (2005).

On March 30, 2006, the Eighth Circuit reinstated its prior opinion and reaffirmed Davis's conviction and sentence. *United States v. Davis*, 357 F.3d 726 (8th Cir. 2004), *cert. granted, judgment vacated by* 543 U.S. 1099 (2005), *opinion reinstated on remand by* 442 F.3d 681 (8th Cir. 2006) (having originally sentenced Davis to life in prison, the high end of the range, the Court of Appeals concluded Davis did not demonstrate a reasonable probability, for purpose of plain-error review, that he would have received a more favorable sentence if I would have considered the United States Sentencing Guidelines as advisory rather than mandatory).[2] A second petition for a writ of certiorari was denied.

On December 9, 2005, Davis filed a second motion for new trial. (Filing 395.) In his motion, Davis claimed he had newly discovered evidence that two of the Government's trial witnesses had lied about his involvement in the drug conspiracy and that Negethon had lied when she testified about the shooting incident. Davis's motion relied primarily on an affidavit from another federal prisoner, who did not testify at trial, in which the prisoner stated the two trial witnesses tried to recruit him to corroborate their false testimony. I found the prisoner's affidavit was not credible because the prisoner had previously written a letter to me, that was provided to counsel, saying Davis had threatened to kill him if he did not sign the affidavit. That motion was denied on January 9, 2006. (Filing 404.)

---

[2] "Indeed, Davis admits that 'the record is devoid of any suggestion that [the district court] would have imposed a more favorable sentence.' (Appellant's Suppl. Br. at 7.) In the first appeal, we affirmed the district court's calculation of the then-mandatory Guidelines range, which was 360 months to life, and Davis cannot quarrel with that calculation now; if this case were to be remanded, it would become the correct *advisory* Guidelines range." *Davis*, 442 F.3d at 684.

4

On October 15, 2007, Davis filed a motion to vacate pursuant to 28 U.S.C. § 2255 alleging he received ineffective assistance of counsel. (Filing 451.) The motion was denied on February 7, 2008, for many of the same reasons cited in the denial of the second motion for new trial. (Filing 455.) The Eighth Circuit denied a certificate of appealability on April 7, 2008. (Filing 468.)

On March 21, 2019, I reduced Davis's sentence based on retroactive changes to the Sentencing Guidelines to 360 months (30 years), which was at the higher end of the amended Guideline range on Counts I and II, and the required consecutive 10-year prison sentence on Count III remained the same. (Filing 492.) During my exchange with counsel for the Government, I pushed her to tell me why I should not reduce his sentence even further, noting that the low end of the retroactive Guidelines was 292 months.

The following exchange occurred:

JUDGE KOPF: One can ask then why did I sentence him to life in prison [when the previous low end of the Guideline had been had 360 months][3].

AUSA SARA FULLERTON: Right.

JUDGE KOPF: And that's a fair question. I did so, for among other reasons, for general deterrence purposes. I mean to be utterly candid, the trial of Davis was one I'll never forget. And the brutality that he exhibited, according to the evidence, is stunning. Not to mention the fact that he was dealing in extremely large quantities of methamphetamine.

(Filing 490, tape counter numbers 1800-1856.)

---

[3] (Filing 252 at CM/ECF p. 23 ¶ 127.)

5

On March 26, 2020, Davis submitted a request for compassionate release to the Warden of FCI Pekin. In his request, he listed several medical complaints, but he failed to allege that any of his medical complaints, his age or those factors in combination, significantly affected his ability to care for himself and/or participate in normal inmate activities. He also asked for placement in the Elderly Home Detention Program. (Filing 498-7.) Davis's request was denied by the Warden on May 7, 2020, with the Warden of FCI Pekin finding that Davis's medical concerns were being adequately addressed within the facility, that Davis was able to participate in normal inmate activities, and that Davis did not qualify for the Elderly Home Detention Program. (Filing 498-8.) Davis filed the instant motion for compassionate release on July 31, 2020. (Filing 498.)

At the time of sentencing, the parties agreed that Davis was detained in this case beginning on July 26, 2001. (Filing 272 at CM/ECF pp. 24:24-25:7; 25:11-15; 27:12-28:2.) The Federal Bureau of Prisons (hereinafter "BOP") website[4] shows his projected release date as August 24, 2035. As a result, Davis has served slightly more than 19 years and two months (approximately 230 months), or about 48% of his 40-year (480 months) cumulative sentence.

I ordered the probation officer to gather all the medical records. I also instructed him to submit a separate evaluation. These documents are in the record as Filings 500 and 501. Counsel for Davis also submitted documentary evidence, and that may be found at Filing 498. I have considered all these documents and have taken judicial notice of the entire court file.

I have considered Davis's release plan. The probation officer advised me as follows:

> On August 7, 2020, the undersigned officer made telephone contact with an acquaintance of Mr. Davis', [name omitted], with whom he has

---

[4] BOP Search by Name.

a child. The purpose of this contact was to discuss Mr. Davis' request for compassionate release and proposed release plan to her residence at [addressed omitted]. [Name omitted] reported she is a long-time friend of Mr. Davis and is knowledgeable about his criminal history. [Name omitted] confirmed she was willing and able to assist Mr. Davis should his request for compassionate release be granted. She indicated he was welcome to reside with her at her residence in [address omitted]. She advised he would have his own living quarters in the basement of the home.

[Name omitted] denied there to be drugs or alcohol at her residence. [Name omitted] advised she does own a "pen gun" but does not know how to operate it or if it is functional. She advised she could have the device removed from the home. She advised she has no problem with probation conducting announced or unannounced home contacts at the residence.

During the contact, [name omitted] indicated a USPO from the District of Colorado (D/CO) had contacted her and completed a video tour of the home and interview as part of Mr. Davis' pending release. [Name omitted] was able to provide the contact information for USPO Michael Bohlen, D/CO. On August 11, 2020, this officer was able to contact USPO Bohlen and discuss his contact with [name omitted]. He advised he completed a Pre-Release/Compassionate Release Investigation of the proposed residence on May 1, 2020 and the D/CO has accepted the proposed release plan. USPO Bohlen provided the Pre-Release/Compassionate Release Investigation acceptance response to this officer. This document is included with this response.

Based on the above information, the undersigned officer is in support of the proposed release plan should Mr. Davis be granted compassionate release.

(Filing 500 at CM/ECF p. 3.)

The record reflects, and I have previously found, that Davis has exhausted his remedies. (Filing 498-8.) Among other things, the Warden found that "all your medical concerns are being monitored or treated. You participate in daily activities

7

at FCI Pekin and you are able to complete all of your activities of daily living without the assistance of others."[5] (*Id.*)

*The Law Generally*

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), a defendant may (after exhausting his administrative remedies) move for reduction of his term of imprisonment based upon "extraordinary and compelling reasons." The statute reads in pertinent part:

> the court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

After considering the factors enumerated in 18 U.S.C. § 3553(a), I may grant the motion if extraordinary and compelling reasons warrant the reduction and such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* In so doing, I find it helpful to consult, but not be bound by, U.S.S.G § 1B1.13 inasmuch as that policy statement was not amended after the adoption of 18 U.S.C. § 3582(c)(1)(A).

---

[5] The filed document contains yellow highlighting. It came to the Clerk in that fashion. The highlighting has been omitted from the above quotation.

I now find and conclude that Davis's sentence should not be reduced even if I assume his age and physical condition constitute extraordinary and compelling circumstances under the statute or the policy statement. *See*, *e.g.*, *United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) (affirming denial of compassionate release motion; stating: "In other words, the district court assumed that Rodd's health and family concerns constituted extraordinary and compelling reasons for compassionate release. Therefore, we need only determine 'whether the district court abused its discretion in determining that the § 3553(a) factors weigh against granting [Rodd's] immediate release.'" (citation omitted)). *See also United States v. Loggins*, 966 F.3d 891, 892 (8th Cir. 2020) (affirming denial of compassionate release motion and noting that: "An application note [to U.S.S.G. § 1B1.13] acknowledges that the district court is 'in a unique position to determine whether the circumstances warrant a reduction,' after considering the factors set forth in 18 U.S.C. § 3553(a) and the circumstances listed in the policy statement. *Id.*, comment. (n.4).").

Briefly, I elaborate.

*Davis's Condition*

Davis is 72. He has no disciplinary record with the BOP. He has been trusted to be a suicide companion for other inmates. I compliment him for this behavior.

He suffers from serious illnesses—like congestive heart failure, hypertension, hyperlipidemia, type 2 diabetes and obesity—that make him far more vulnerable to COVID-19. The same is true because he is 72 years of age. On the other hand, his medical problems seem to be reasonably controlled by medication. The incidence of COVID where he is presently confined is low.[6]

---

[6] For COVID cases, *see* COVID-19 Cases (search by institution name) and for general demographics of the institution, *see* Pekin FCI. As of October 5, 2020, there were approximately 1,156 inmates at FCI Pekin. Of that number and as of that

The 152 pages of medical records generally show he has been well cared for. For example, it appears that he is thoroughly evaluated at least once a year for his cardiac-related problems and any other medical issues, as shown by the records issued periodically by the Chronic Care Clinic. For example, see the one dated March 17, 2020. (*E.g.*, Filing 501 at CM/ECF pp. 86-89.) This year, after an outside consultation, a significant cataract was removed from one eye (*Id.* at CM/ECF p. 141), and he is scheduled to receive another removal of a cataract from the other eye. (*Id.* at CM/ECF p. 145.)

He was given a colonoscopy in 2019, which was normal. (*Id.* at CM/ECF p. 10.) Bladder stones were removed in 2017, and Davis denied urinary complaints. (*Id.*) He has had a hernia surgically repaired in 2018. (*Id.* at CM/ECF pp. 15, 61.) Apparently for his own protection, he was quarantined on July 23, 2020, although he was asymptomatic. (*Id.* at CM/ECF p. 28.) I have found no indication in the records that he was infected, and his counsel makes no such claim. It appears that the institution closely monitors inmates for COVID symptoms. (*Id.* at CM/ECF pp. 104-107.)

At least as early as August 6, 2019, he was provided with a low bunk, a CPAP machine and cleared for work. (*Id.* at CM/ECF p. 40.) He has been provided with the recommended doses of the shingles vaccine. (*Id.* at CM/ECF p. 127.) On July 27, 2020, he was cleared to work in the food service area without restrictions. (*Id.* at CM/ECF p. 128.[7])

---

date, 10 inmates tested positive, no staff tested positive, 9 staff recovered, and no deaths were reported.

[7] This is true despite a March 17, 2020, radiographic finding that Davis suffers pain, apparently from disc narrowing in the back, but with no malignancy or mineralization of the bone. (Filing 501 at CM/ECF pp. 146, 150.) There was no radiographic evidence of an acute fracture or joint-space misalignment regarding Davis's complaint of pain in the left shoulder. (*Id.* at CM/ECF p. 148.)

The foregoing said, I will be candid, without intending to be unkind. Whether Davis comes down with COVID or not, unless I release him, he will almost certainly die in prison, as his release date is August 24, 2035. Just as it did when I originally sentenced Davis to life in prison, I am fully cognizant of this stark fact.

*Application of Law to Facts*

Initially, I agree with defense counsel on several points. The way Davis phrased his request to the Warden was sufficient for me to consider the full range of reasons that justify compassionate release under the statute and the relevant Guideline policy statement. Moreover, if I released him, Davis would not likely be a danger to anyone given both his age and serious medical conditions. Otherwise, I disagree with defense counsel.

Defense counsel[8] argues that I could rely upon the policy statement and commentary thereto found in U.S.S.G. § 1B1.13. I reject defense counsel's argument that I should grant the motion under U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). There is insufficient evidence to conclude that Davis cannot care for himself at Pekin. Indeed, on July 27, 2020, he was cleared for work in the kitchen.

Otherwise, I am more than willing to and have considered all the arguments raised by defense counsel regarding U.S.S.G. §1B1.13 and related commentary. *But* the policy statement and 18 U.S.C. § 3582(c)(1)(A)(i) are both discretionary and ultimately driven by the goals of sentencing found in § 3553(a). And that is where the rubber hits the road.

Davis's crimes were horrific, whether merely schlepping a lot of dope, threatening men, women or children with violence and death or firing a shot either at or near a fellow thought to be a snitch. General deterrence must mean something. Just punishment must mean something. The seriousness of the offense must mean

---

[8] I compliment defense counsel for the superb representation of Davis.

11

something. Promotion of respect for the law must mean something. These sentencing goals do not disappear because a person is old, sick and vulnerable to the pandemic. Weighing *all* the § 3553(a)(1)-(7) factors together, Davis must remain in prison.

IT IS ORDERED that the Motion for Compassionate Release (filing 498) is denied.

Dated this 5th day of October, 2020.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Court